PORTLAND TRACTOR CO., INC.

*vs.*

INHABITANTS OF THE TOWN OF ANSON.

Cumberland.    Opinion, August 11, 1936.

*Walter M. Tapley, Jr.*
*James M. Thorne*, for plaintiff.
*Bernard Gibbs*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

STURGIS, J.    The Selectmen of the Town of Anson on February 5, 1935, attempted to enter into a contract with the Portland Tractor Co., Inc., of Portland, Maine, for the use of a Cletrac 80 tractor and Sargent plow for breaking roads during the remainder of that snow season. The contract was in the form of a written order signed by the Selectmen and thereafter accepted and approved by the president of the Tractor Co., and provided that the charge or rental price for the use of the plow was to be $2,500 payable within fifteen days from date of delivery, but "subject to ability of town to secure sufficient funds for truck expense and income account." The truck was delivered and used a few times, but the town failed to affirm the contract, denied liability, and refused to pay for the use of the tractor.

This action was begun by writ dated October 2, 1935, and entered at the following November Term in the Superior Court for Cumberland County. The declaration is in assumpsit on an account

annexed with omnibus counts attached. The specifications are limited to the amount of rental charge agreed upon in the contract made by the Selectmen and for accrued interest. The plea is the general issue. At the trial, the presiding Justice, on motion, directed the jury to return a verdict for the defendant. An exception was reserved.

The bill of exceptions shows in the exhibits and evidence made a part thereof that, at the annual town meeting held in Anson in March, 1932, pursuant to Article 23 of the warrant, it was voted

"to ratify and confirm the action of the selectmen and the State Auditor's department in setting up an account entitled 'Truck expense and income,' said account to be continued as such hereafter and to be credited with the earnings of the trucks, tractors, and other road equipment, (at the same rates as allowed by the state for similar equipment) and the proceeds of sale of said trucks, tractors and other road equipment, and appropriate the proceeds of such credits for the cost of motor fuel, oil, grease, repairs, parts, freight and express on same, housing of such equipment, and the purchase, lease or rental of trucks, tractors and other equipment and other expense necessary and incidental to the owning and operating of such equipment."

This account was set up and thereafter from year to year carried on the books, but treated only as a bookkeeping entry. No moneys were transferred or specifically set apart as belonging to it. Credits were set up for the use of the road equipment of the town together with other small miscellaneous items, and moneys paid out of the town treasury for road expenses were debited. The account did not record any actual money transactions nor in its apparent credit balance represent the existence of funds available for the purposes enumerated in the vote by which it was authorized.

At the annual town meeting of March 5, 1934, under Article 22, the Town of Anson had voted to raise and appropriate $2,500

"for the removal of snow, sanding streets and walks, and erecting snow fence, said appropriation, if any, to be available for expenditure until May 1, 1935."

But the moneys of this appropriation had been entirely expended when this contract for the lease of the snow plow was signed. The record further shows that the town did not have sufficient funds to pay the rental charge agreed upon and could not negotiate a loan. The last regular valuation of all the taxable property of its inhabitants was $937,013, and its net debt approximately $70,728.21. It was over its debt limit. Article XXXIV of the amendments to the constitution provides:

"No city or town having less than forty thousand inhabitants, according to the last census taken by the United States, shall hereafter create and debt or liability, which single or in the aggregate, with previous debts or liabilities shall exceed five per centum of the last regular valuation of said city or town."

Mathematical computation shows that this constitutional prohibition had been disregarded and a further violation of it was attempted in this transaction.

The contract in suit was illegal and void when made. Neither prior authorization or subsequent ratification by the town, which does not appear, could give it validity. All indebtedness or liability incurred beyond the constitutional limit is void and unenforcible, and the fact that the municipality has had the benefit of the contract by which the indebtedness was incurred does not render it liable upon an implied contract to pay the value thereof. 3 McQuillin Mun. Corp. (2d Ed.), Sec. 1274; 19 Ruling Case Law, 987; 44 C. J., 138 and cases cited. One who contracts with a city or town, by which an indebtedness or liability is created, must, at his peril, take notice of its financial standing and condition and satisfy himself as to whether its debt limit is or will thereby be exceeded.

For still another reason, recovery was properly denied in this action. The Selectmen of Anson were not and could not be authorized to make the contract which they signed. The Portland Tractor Co., Inc., in leasing the snow plow to them, was bound to take notice, at its peril, of the extent of their authority. No liability attached to the town on implied assumpsit or otherwise on their unauthorized agreement. *Morse* v. *Montville*, 115 Me., 454, 99 A., 438; *Power Company* v. *Van Buren*, 116 Me., 119, 100 A., 371;

*Michaud* v. *St. Francis*, 127 Me., 255, 143 A., 56 ; *Buzzell* v. *City of Belfast*, 131 Me., 185, 160 A., 21.

No other points argued on the briefs show error in the ruling below. Upon the evidence, under the established rules of law, it was the duty of the presiding Justice to direct the jury to return a verdict for the defendant.

*Exceptions overruled.*